UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KAREN POTEAT, *etc.* | Case No. 1:15-cv-02306 |
| Plaintiff | Judge James S. Gwin |
| *v.* | |
| VISIONWORKS OF AMERICA, INC. | |
| Defendant | |
| | |
| CHERYL LENART, *etc.* | Case No. 1:16-cv-02505 |
| Plaintiff | |
| *v.* | |
| VISIONWORKS OF AMERICA, INC. | |
| Defendant | |

**PLAINTIFFS' <u>UNOPPOSED</u> MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

MOTION.......................................................................................................................... 1

MEMORANDUM IN SUPPORT.......................................................................................... 2

I.    INTRODUCTION .................................................................................... 2

II.    TERMS OF THE PROPOSED SETTLEMENT ................................................ 4

III.  ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL................................... 6

    A.  The Proposed Settlement Is the Result of Arm's-Length Negotiations between Experienced Counsel and Conducted by an Independent Mediator and the Court ...... 6

    B.  The Proposed Settlement Is Fair, Reasonable, and Adequate ..................................... 7

IV.  ARGUMENT IN SUPPORT OF SETTLEMENT CLASS CERTIFICATION................. 9

    A.  The Settlement Classes Are Ascertainable .............................................................. 10

    B.  The Settlement Classes Are Sufficiently Numerous and Joinder Is Impracticable .... 10

    C.  There Is a Question of Law or Fact Common to the Classes...................................... 11

    D.  Plaintiffs' Claims Are Typical of the Classes' Claims ............................................... 12

    E.  Plaintiffs Are Adequate Class Representatives........................................................... 12

    F.  Common Questions Predominate ............................................................................. 13

    G.  Class Litigation Is Superior to Individual Adjudications .......................................... 14

V.    THE NOTICE, NOTICE PLAN, APPOINTMENT OF THE CLAIMS ADMINISTRATOR & ARGUMENTS IN SUPPORT THEREOF.............................. 15

    A.  Form of Notice.......................................................................................................... 15

    B.  Timing of Notice and Claims Period ........................................................................ 16

    C.  The Claims Administrator......................................................................................... 17

VI.  CONCLUSION.................................................................................................... 17

PROOF OF SERVICE ....................................................................................................... 18

ii

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997) ........................................................ 9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1191 (2013) .......................... 12

*Armstrong v. Bd. of School Directors of City of Milwaukee,* 616 F.2d 305, 315 (7th Cir. 1980) .. 6

*Beattie v. CentryTel, Inc.,* 511 F.3d 554, 560-61 (6th Cir. 2007) ........................................... 9, 11

*Bert v. AK Steel Corp.,* 2008 U.S. Dist. LEXIS 111711, at *2 (S.D. Ohio Oct. 23, 2008) ........... 7

*Bridging Communities, Inc. v. Gamble Plumbing & Heating, Inc.,* 2016 U.S. App. LEXIS 22297, at *9-10 (6th Cir. Dec. 15, 2016) ............................................................................................ 9

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1991) ........................................................................................................................................ 9

*Gooch v. Life Investors Ins. Co. of American,* 672 F.3d 402, 423 (6th Cir. 2012) ..................... 13

*In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 D.R.D. 359, 379 (N.D. Ohio 2001) ................... 6

*In re Toys "R" Us-Del., Inc. FACTA Litig.,* 295 F.R.D. 438, 468 (C.D. Cal. 2014) ................... 5

*In re Whirlpool Corp. Front-Loading Washing Prods. Liab. Litig.,* 722 F.3d 838, 849, 852 (6th Cir. 2013) ................................................................................................................................ 9, 11

*In re Whirlpool,* 2016 U.S. Dist. LEXIS 174542 at *22 (N.D. Ohio May 11, 2016) ................... 14

*Jenkins v. Hyundai Motor Fin. Co.,* 2008 U.S. Dist. LEXIS 23073, at *31 (S.D. Ohio March 24, 2008) ...................................................................................................................................... 12

*Ohio Public Interest Campaign v. Fisher Foods, Inc.,* 546 F. Supp. 1, 7 (N.D. Ohio 1982) ......... 6

*Pfaff v. Whole Foods Market Grp. Inc.,* 2010 U.S. Dist. LEXIS 104784, at *18-19 (N.D. Ohio Sept. 29, 2010) .......................................................................................................................... 8

*Powers v. Hamilton Cty. Pub. Defender Comm'n,* 501 F.3d 592, 618 (6th Cir. 2007) ............... 12

*Rikos v. Proctor & Gamble Co.,* 799 F.3d 497, 504 (6th Cir. 2015) ............................................ 9

*Swigart v. Fifth Third Bank,* 2014 U.S. Dist. LEXIS 94450, at *6 (S.D. Ohio July 11, 2014) ...... 7

*Taylor v. CSX Transportation, Inc.,* 264 F.R.D. 281, 288 (N.D. Ohio 2007) ............................. 10

*United States v. Jones & Laughlin Steel Corp.,* 804 F.2d 348, 351 (6th Cir. 1986) ...................... 5

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2451, 2550 (2011) ................................................... 10

*Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983) ............................................................ 5

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir. 2012) ...................................... 10

**Rules**

FED. R. CIV. P. 23(b)(3) ............................................................................................................ 9, 12

**Treatises**

Manual for Complex Litigation § 21.62 (4th ed. 2004) ................................................................. 7

## MOTION

Plaintiffs Karen Poteat[1] and Cheryl Lenart[2] move this Court for preliminary approval of the proposed settlement of their class-action claims against Defendant Visionworks of America, seeking an Order from the Court:

1. Entering preliminary approval of the Proposed Settlement, the terms of which are set forth in the parties' *Settlement Agreement*, which is submitted as **Exhibit 1** to this motion;

2. Conditionally certifying a class of Ohio consumers and a class of Illinois consumers for settlement purposes only, defined as follows:

   *Ohio Settlement Class.* All consumers who completed a Buy-One-Get-One-Free transaction at a Visionworks store located in Ohio from June 25, 2012, through September 15, 2016.

   *Illinois Settlement Class.* All consumers who completed a Buy-One-Get-One-Free transaction at a Visionworks store located in Illinois from June 8, 2013, through September 15, 2016.

3. Appointing Plaintiff Poteat as Class Representative of the Ohio Settlement Class and Plaintiff Lenart as Class Representative of the Illinois Settlement Class;

4. Appointing Drew Legando, Jack Landskroner, and Tom Merriman of Landskroner Grieco Merriman, LLC; Mark Schlachet; and Doug Werman and Maureen Salas of Werman Salas, P.C., as Settlement Class Counsel;

5. Approving the parties' negotiated forms of *Class Notice,* which are submitted as **Exhibits 2 and 3** to this motion; and

6. Appointing KCC, LCC, as Claims Administrator, and directing the firm to disseminate notice and to process and report upon claims as set forth in Section IV of the *Settlement Agreement*.

---

[1]     Ms. Poteat is the named plaintiff in Case No. 15-cv-2306.  *See* Second Amended Complaint (Doc. 51).  By order of this Court (Doc. 42), Ms. Poteat was substituted into this case as the proposed class representative to replace Elliott Graiser, the original named plaintiff.  Thus, for most of the life of this case, it was styled *Graiser v. Visionworks of America, Inc.*  As a result of the substitution, the caption was changed to replace Mr. Graiser with Ms. Poteat.

[2]     Ms. Lenart is the named plaintiff in Case No. 16-cv-02505.  *See* First Amended Complaint (Doc. 25).  Her case was originally filed in the U.S. District Court for the Northern District of Illinois, but was transferred by Judge Matthew Kennelly to this Court for resolution with the *Poteat* action.  *See* Minute Entry (Doc. 39).  Upon transfer, the *Lenart* action was initially assigned to Judge Solomon Oliver, who granted the Parties' Joint Motion to Reassign the case to this Court.  *See* Order (Doc. 52).

The parties have extensively negotiated the terms of the Settlement Agreement and the forms of Class Notice.  They have agreed on the details related to settlement, notice, certification, and approval of the proposed settlement.  As such, Visionworks does not oppose this motion.  And a *Proposed Order* granting the requested relief is being submitted as **Exhibit 4** to this motion.

<u>**MEMORANDUM IN SUPPORT**</u>

## I.    INTRODUCTION

Plaintiff Karen Poteat (on behalf of an Ohio class) and Plaintiff Cheryl Lenart (on behalf of an Illinois class) brought consumer-protection claims against Defendant Visionworks of America related to the company's well-marketed use of a buy-one-get-one-free ("BOGO") sale of eyeglasses at its retail locations.

Plaintiffs alleged that Visionworks made its BOGO offers continuously and repeatedly, such that, over time, the cost of the first pair of eyeglasses inflated above its regular price and covered part of the cost of the second pair of eyeglasses, which was supposed to have been free.[3] Plaintiffs further alleged that Visionworks sometimes offered an *unadvertised* alternative to the BOGO offer, which its sales clerks were uniformly trained to offer if a customer balked at the high BOGO price.  The alternative *single-pair* offer was purportedly a 40% discount from the regular price of a single pair of eyeglasses.  Based on this evidence, Plaintiffs' theory of damages was that the single-pair price was the *true* regular price that BOGO purchasers should have paid. Thus, according to Plaintiffs and their expert economist, class members' damages are equal to 40% of the price they paid.[4]  Visionworks has at all times vigorously denied Plaintiffs' allegations and its alleged liability to Plaintiffs and further denied that Plaintiffs suffered any

---

[3]      *See Poteat* Second Amended Complaint (Doc. 51), ¶¶3-4, 15, 20; *accord Lenart* First Amended Complaint (Doc. 25), ¶¶6-7, 17, 37.

[4]      *See* Expert Report of John Burke, Ph.D. (Doc. 40-8), PageID # 2383-84.

damages, steadfastly taking the position that its BOGO promotion complies with all applicable laws.

The cases were extensively and vigorously litigated for two and a half years, including proceedings in front of a state court and two federal courts, as well as an interlocutory appeal to the Sixth Circuit, wherein the Sixth Circuit affirmed the propriety of Visionworks' removal to federal court.  Plaintiffs' counsel opposed *five* dispositive motions (one of Visionworks' motions resulted in a conditional dismissal of Plaintiffs' action and another of which resulted in a separate dismissal of Plaintiffs' claim for fraud) and *four* critical discovery motions; they rescued the class claims in the Ohio action by successfully substituting the lead plaintiff after this Court granted summary judgment to Visionworks on Mr. Graiser's class claims; they obtained important corporate testimony from Visionworks' then-Vice President of Marketing under Rule 30(b)(6); they defended the deposition of Mr. Graiser, the former Ohio plaintiff; and they reviewed approximately 36,000 pages of documents, including voluminous electronically-stored information. [5]

After about six months of active litigation, Plaintiffs' counsel and Visionworks' counsel engaged in a day-long mediation before James McMonagle, Esq., on December 16, 2014.  This arms-length negotiation did not result in resolution of the action.  After almost another year of fierce litigation, Plaintiffs' counsel and Visionworks' counsel engaged in a second day-long mediation before Mr. McMonagle on October 29, 2015.  This second mediation session did not result in resolution of the action.[6]

After almost another year of continued extensive litigation, Plaintiffs' counsel and Visionworks' counsel participated in a pretrial conference in the Ohio action, in which the Court conducted a half-day judicially-administered settlement conference.[7]  This third mediation

---

[5]     *See* Declaration of Drew Legando, ¶4, submitted as **Exhibit 5** to this motion.

[6]     *Id.* at ¶6.

[7]     *Id.*

session ultimately resulted in the global class-wide settlement of both the Ohio action and the Illinois action.[8]

The proposed settlement provides class members who submit claims a recovery of up to $100 per BOGO transaction.[9] The average BOGO price was approximately $400; therefore, claimants will likely receive the equivalent of a 25% refund. Plaintiffs' theory of damages, it should be recalled, was that class members were entitled to the equivalent of a 40% refund. Thus, claimants stand to recover in this settlement **62.5%** of the absolute-best-day-after-trial damage figure. Given the substantial risks and costs associated with additional dispositive motions and class certification, possible interlocutory appeal, and trial, the Proposed Settlement represents a fair, reasonable, and adequate resolution of these claims with substantial benefits to class members.[10] Therefore, this Court should grant the Proposed Settlement preliminary approval and direct Notice to be issued to a certified Settlement Class.

## II. TERMS OF THE PROPOSED SETTLEMENT

In exchange for a release of all class claims, Visionworks has agreed to fund a "Gross Settlement Amount" of $4,209,280 to pay claims submitted by class members. The Gross Settlement Amount is comprised of two components: a maximum payment to Ohio claimants of $1,155,280; and a maximum payment to Illinois claimants of $3,054,000. Each claimant,

---

[8]    *See Poteat* Transcript of Settlement (Doc. 56).

[9]    *See* Settlement Agreement (Ex. 1), §§ 7.1.1-7.2.2. The Parties agreed that claims will be capped at $1,155,280 for Ohio class members and $3,054,000 for Illinois class members. The Parties also agreed that Plaintiff's counsel may petition for a 1/3 fee from the gross settlement amount of $4,203,093, and that the fee would be applied proportionately to the Ohio and Illinois caps. Assuming the fee is approved, there would be enough funds available under the two caps for over 26% of both classes to make claims and each claimant would still recover the full $100 amount. If more than 26% of a state class made claims, then the amount of each claimant's recovery would be reduced from $100 proportionately. (It should also be noted that if a claimant's paid less than $100 for the BOGO transaction, he or she will receive a full refund of that purchase price, rather than $100.)

[10]    *See* Legando Declaration at ¶7.

4

regardless of his or her state, is entitled to $100 cash (or, for those who paid a purchase price of less than $100, a cash payment equal to the purchase price).[11]

Visionworks has agreed to pay for class notice (the form and plan for which are discussed in **Section V** below).[12]  Visionworks has also agreed not to oppose Plaintiffs' counsel's forthcoming petition for an award of fees and expenses (including costs of administration), so long as the total award sought by the petition does not exceed 1/3 of the Gross Settlement Amount.[13]  The fee award will be "counted against" the Ohio maximum payment cap and the Illinois maximum payment cap on a proportionate basis: since the Ohio cap is about 40% of the Gross Settlement Amount, 40% of the fee award will be counted against that cap; and since the Illinois cap is about 60% of the Gross Settlement Amount, 60% of the fee award will be counted against that cap.[14]

Thus, under the Settlement, the Parties expect class members who submit claims to receive a $100 in cash (or a full refund if they paid less than $100) for *each* BOGO transaction they completed within the statute of limitations for consumer claims in their state.  (That is, class members are eligible for the $100 payment for multiple BOGO transactions within the relevant period.)  As stated above, the average price of eyeglasses purchased under the BOGO promotion was approximately $400; therefore, each claiming class member will receive the equivalent of a 25% refund on average.  Since Plaintiffs' damage theory sought—on its best day at trial—the equivalent of a 40% refund on average, the class recovery is very strong and should be approved.

---

[11]     *See* Settlement Agreement (Ex. 1) at §§ 1.15, 7.1.1-7.2.2, 11.1-11.4.  In the event that the total number of claims for a given state, combined with the portion of the fee award attributed to that state, would result in a payment for that state in excess of the cap for that state, settlement payments to the claimants from that state would be reduced on a pro-rata basis, so that all claimants from that state receive equal treatment.

[12]     *Id.* at § 4.3.1.

[13]     *Id.* at § 1.1, 9.1.  Plaintiffs' counsel intends to include in the forthcoming petition a request for modest incentive/service awards for the two lead plaintiffs, and that these amounts be taken from the attorney's-fee component and thus subject to the negotiated 1/3 cap on the total award.  That is, the incentive awards will reduce the attorney-fee request, and would not be borne by class members.
[14]     *Id.* at §§ 7.1.2, 7.2.2.

## III.  ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL

At the preliminary-approval stage, the Court must only determine whether the proposed settlement "fair, adequate, and reasonable."[15]  Given that the Court will have an opportunity to analyze the Proposed Settlement at a final approval hearing, "at this junction, [the Court] is not obligated to, nor could it reasonable, undertake a full and complete fairness review."[16]

"In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."[17]  This assessment should take into account the uncertainty of outcome in litigation and the cost of continued litigation.[18]  The Court should not second guess the settlement terms, and should presume that the settlement is fair given the extensive negotiations of experienced counsel.[19]

### A.  The Proposed Settlement Is the Result of Arm's-Length Negotiations between Experienced Counsel and Conducted by an Independent Mediator and the Court

This Court is aware of the vigorous representation by Visionworks' counsel and Plaintiffs' counsel from the extensive briefing and in-chambers conferences, as well as the dockets from the Illinois court and the Ohio state court.  The Court has also been advised of the two day-long mediation sessions—one conducted after substantial discovery, the other after

---

[15]     *United States v. Jones & Laughlin Steel Corp.,* 804 F.2d 348, 351 (6th Cir. 1986); *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983).

[16]     *In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 359, 379 (N.D. Ohio 2001).

[17]     *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982), *cert denied,* 459 U.S. 1217 (1983)).

[18]     *See Ohio Public Interest Campaign v. Fisher Foods, Inc.,* 546 F. Supp. 1, 7 (N.D. Ohio 1982).

[19]     *See Officers for Justice* at 625; *Vukovich* at 923; *see also Armstrong v. Bd. of School Directors of City of Milwaukee,* 616 F.2d 305, 315 (7th Cir. 1980).

discovery had been completed and a number of important motions decided—before an experienced and well-respected mediator.  And, of course, the Court itself facilitated the negotiations that resulted in the Proposed Settlement.

Under such circumstances, "it is beyond dispute that the settlement was the result of arms-length negotiation, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through formal mediation conducted by a neutral mediator" on two occasions and by the Court on the third.[20]  Indeed, "[t]he participation of an independent mediator"—not to mention the Court—"virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."[21]

### B.    The Proposed Settlement Is Fair, Reasonable, and Adequate

*Fairness* involves "a comparative analysis of the treatment of class members vis-à-vis each other."  *Reasonableness* involves "an analysis of the class allegations and claims and the responsiveness of the settlement to those claims."  And *adequacy* involves "a comparison of the relief granted relative to what class members might have obtained without using the class action process."[22]

The Proposed Settlement is fair because it treats all class members the same: each is entitled to receive up to $100, and any reduction in that amount (due to fees, costs, and an extremely high claims rate) will be borne equally by all class members who submit claims.

The Proposed Settlement is reasonable because it compromises claims that were in dispute and at risk in exchange for a recovery that is 62.5% of Plaintiffs' damages theory.  As an initial matter, neither the Illinois court nor this Court had certified a class, but Plaintiffs were able to achieve a class-wide settlement.  Moreover, the claims in Illinois and in this Court were

---

[20]    *Swigart v. Fifth Third Bank,* 2014 U.S. Dist. LEXIS 94450, at *6 (S.D. Ohio July 11, 2014).

[21]    *Bert v. AK Steel Corp.,* 2008 U.S. Dist. LEXIS 111711, at *2 (S.D. Ohio Oct. 23, 2008).

[22]    Manual for Complex Litigation § 21.62 (4th ed. 2004).

both subject to dispositive motions regarding whether *any* damages could be recovered.  As this Court explained,

> [There is a] disagreement among state and federal courts addressing consumer protection laws.  Some courts maintain that consumers are entitled to the benefit-of-the-bargain when they purchase artificially inflated items that are subsequently discounted or offered for buy-one-get-one free.  *See Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1108 (9th Cir. 2013)....  Other courts disagree with this approach, finding that because the consumer willingly paid the price, regardless of how it was inflated and then discounted, there are no actual damages.  *See Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 740 (7th Cir. 2014).[23]

The Sixth Circuit has not decided this question, this Court had not yet done so (but had given Visionworks leave to file a dispositive motion raising it), and the Illinois court would have been bound to follow or somehow distinguish the Seventh Circuit law on the point.[24]  Thus, the ultimate viability of the claims was in serious question, and fell between two opposing lines of contradictory case law, which made success *uncertain*—and appeals, perhaps in both Illinois and Ohio, *near-certain,* which, if Plaintiffs were success at the trial court level, would have delayed any recovery to class members for months and probably years.  Therefore, Plaintiffs' accepting a compromise of their claims that returned a substantial recovery on their damage theory *without further expense or delay* was well within the range of reasonable settlements.

The Proposed Settlement is adequate because "[i]t is beyond question that, due to the small amounts of damages allegedly suffered by individual class members [*i.e.,* an average of $160], maintenance of this case as a class action provides the only feasible procedural mechanism for the proposed class to pursue their claims."[25]

Therefore, the Court should grant preliminary approval over the Proposed Settlement.

---

[23]     *Poteat* Opinion and Order (Doc. 42), p. 11.

[24]     *See Lenart* Plaintiff's Opposition to Defendant's Motion to Dismiss (Doc. 35), pp. 3-12 (setting forth arguments to distinguish *Camasta* and similar cases).

[25]     *Pfaff v. Whole Foods Market Grp. Inc.,* 2010 U.S. Dist. LEXIS 104784, at *18-19 (N.D. Ohio Sept. 29, 2010) (Gwin, *J.*).

## IV.    ARGUMENT IN SUPPORT OF CERTIFICATION OF THE SETTLEMENT CLASS

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[26]  This policy is at work when considering certification of a settlement class, since the law favors the settlement of such actions.[27]

"Class certification is appropriate if the district court finds ... that the requirement of Rule 23 have been met."[28]  Rule 23(a) establishes four requirements: (**1**) numerous class members, (**2**) who have a question of law or fact in common, (**3**) which is being pursued by a representative whose claims are typical of those of the class members, and (**4**) who will adequately protect the interests of the other class members.[29]

And Rule 23(b)(3) establishes two additional requirements: (**1**) "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof,"[30] and (**2**) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[31]  Because Plaintiffs are seeking certification of a settlement class, such issues as reliance and damages—which are commonly raised when a plaintiff seeks certification of a class for litigation purposes, and which go to manageability—are not a concern in this context.

---

[26]    *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

[27]    *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1991).

[28]    *Rikos v. Proctor & Gamble Co.,* 799 F.3d 497, 504 (6th Cir. 2015).

[29]    *In re Whirlpool Corp. Front-Loading Washing Prods. Liab. Litig.,* 722 F.3d 838, 849 (6th Cir. 2013).

[30]    *Bridging Communities, Inc. v. Gamble Plumbing & Heating, Inc.,* 2016 U.S. App. LEXIS 22297, at *9-10 (6th Cir. Dec. 15, 2016) (quoting *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007)).

[31]    FED. R. CIV. P. 23(b)(3).

9

Instead, "[t]he Rule 23(b)(3) predominance inquiry tests whether [the] proposed class[ is] sufficiently cohesive to warrant adjudication by representation."[32]

### A.  The Settlement Classes Are Ascertainable For Present Purposes

The Parties have defined the Settlement Classes as follows:

*Ohio Settlement Class.*  All consumers who completed a Buy-One-Get-One-Free transaction at a Visionworks store located in Ohio from June 25, 2012, through September 15, 2016.

*Illinois Settlement Class.*  All consumers who completed a Buy-One-Get-One-Free transaction at a Visionworks store located in Illinois from June 8, 2013, through September 15, 2016.

Each of these definitions provide "objective criteria" by which the Court can determine whether a person is included or excluded from the Settlement Classes—indeed, Visionworks has sales records identifying each qualifying consumer—such that the classes are properly defined for purposes of certifying a settlement class and administering the proposed settlement.[33]

### B.  The Settlement Classes Are Sufficiently Numerous and Joinder Is Impracticable For Present Purposes

The first requirement of Rule 23(a)—numerosity—"requires that the class be 'so numerous that joinder of all members is impracticable.'"[34]

There are over 100,000 qualifying BOGO transactions between the two states within the relevant time periods, representing tens of thousands of individual class members (*i.e.,* some class members may have made multiple BOGO transactions).  This is sufficiently large number

---

[32]    *Amchem Prods., Inc. v. Winsor*, 521 U.S. 591, 623 (1997).  Defendant has stated that it does not waive the right to object to class certification in a litigation context de novo in the event the proposed settlement is terminated for any reason. (See Settlement Agreement §§ [TK] (reciting that fact).)

[33]    *Cf. Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir. 2012).

[34]    *Amos v. PPG Indus., Inc.,* Case No. 2:05-cv-70, 2015 WL 4881459, at *6 (quoting Fed. R. Civ. P. 23(a)(1) and certifying, for settlement purposes, a class of "more than 1,600 individuals").

of geographically dispersed persons to satisfy Rule 23(a)(1) for purposes of certifying the settlement class.[35]

### C.     There Is a Question of Law or Fact Common to the Classes

The second requirement of Rule 23(a)—commonality—is satisfied where "there are questions of law or fact common to the class."[36] This requires a common contention that is of such a nature that it is capable of class-wide resolution, meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[37] "The commonality test is qualitative rather than quantitative, that is, there need only be a single issue common to all members of the class."[38]  In *Wal-Mart*, the U.S. Supreme Court clarified that Rule 23(a)'s commonality requirement turns on "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."[39] And "[s]ettlement" can "provide[] an answer to the common issues raised by class members, regardless of specific types of injury suffered by the alleged violations."[40]

The proposed settlement class satisfies the commonality requirement of Rule 23(a). Plaintiffs allege that Visionworks made its BOGO offer continuously, and therefore they have identified a factual question common to all members of the proposed settlement class (how often did the company make its BOGO offer).  And that common factual question raises legal

---

[35]     *See Taylor v. CSX Transportation, Inc.,* 264 F.R.D. 281, 288 (N.D. Ohio 2007) ("it is generally accepted that a class of 40 or more members is sufficient").

[36]     Fed. R. Civ. P. 23(a)(2).

[37]     *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

[38]     *In re Inter-Op*, 204 F.R.D. at 340 (internal quotation marks and citation omitted).

[39]     131 S. Ct. 2541, 2551 (2011) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-32 (2009)) (emphasis in original).

[40]     *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *3 (S.D.N.Y. Apr. 16, 2012) (certifying settlement class and granting final approval of a class settlement).

questions common to the proposed settlement class as well: can a consumer recover actual damages if he willingly paid the retail price, regardless of whether it was inflated.

Thus for purposes of certifying the proposed settlement class, the commonality standard is met.

### D. Plaintiffs' Claims Are Typical of the Classes' Claims For Present Purposes

"Typicality [is] liberally construed [and] does not mean identical," and "is met if the class members' claims are fairly encompassed by the named plaintiff's claims."[41] A claim is typical if it "arise[s] from the same course of conduct and is predicated on the same legal theories as the claims of the Settlement Class."[42]

Ms. Poteat's consumer-protection claim is typical of the proposed Ohio settlement class's consumer-protection claim because all such claims arise from the same alleged practice—Visionworks' allegedly continuous and repeated BOGO offers—and are predicated on the same legal theory—a *per se* violation of the Ohio Consumer Sales Practices Act.

Similarly, Ms. Lenart's consumer-protection claim is typical of the proposed Illinois settlement class's consumer protection claim because all such claims arise from the same alleged practice—Visionworks' alleged use of BOGO offers for more than six months during a 12-month period—and are predicated on the same legal theory—a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (which refers to a Federal Trade Commission rule regarding such offers).

### E. Plaintiffs Are Adequate Class Representatives For Present Purposes

The fourth element of Rule 23(a)—adequacy—"requires the representative parties will fairly and adequately protect the interests of the class. Due process demands this inasmuch as a

---

[41] *Swigart,* 288 F.R.D. at 184; *In re Whirlpool Front-Loading Washing Prods. Liab. Litig.,* 722 F.3d 838, 852 (6th Cir. 2013).

[42] *Amos*, 2015 WL 4881459, at *7; *see also Beattie v. CentryTel, Inc.,* 511 F.3d 554, 560-61 (6th Cir. 2007).

12

final judgment will bind all class members.  To establish adequacy of representation, plaintiffs must satisfy two elements.  First, the representatives must have interests common with the unnamed members of the class,  Second, it must be shown that the representatives—through qualified counsel—will vigorously prosecute the interests of the class."[43]

Ms. Lenart and Ms. Poteat are both members of their respective classes, have the same interest in recovering a portion of the purchase price of the BOGO transaction, and have no conflicts with the class and have pursued and approved of a class-wide settlement which benefits all class members equally.

And Plaintiffs' counsel are experienced in consumer class-action litigation[44] and vigorously litigated the case (in multiple forums) over a number of years and at substantial time and expense.  They were able to negotiate a substantial settlement in favor of the class as a whole.  Indeed, they have "worked diligently to identify and investigate the potential claims in this matter, [have] shown an eagerness to prosecute the case, [including] time-consuming discovery and extensive briefing, [and] well briefed the matters before the Court," which justifies their appointment as lead counsel for the Settlement Class.[45]

### F.      Common Questions Predominate For Present Purposes

Because Plaintiffs seek certification of a settlement class, the focus of the predominance inquiry here is whether the proposed settlement class is sufficiently cohesive to warrant adjudication by representation.[46] This Court "need not inquire whether the case, if tried, would present intractable management problems," and "individual issues relating to causation, injury,

---

[43]      *Amos*, 2015 WL 4881459, at *7 (internal quotation marks and citations omitted).

[44]      *See* Firm Resumes and Attorney CVs submitted with the Legando Declaration (Ex. 5).

[45]      *Jenkins v. Hyundai Motor Fin. Co.,* 2008 U.S. Dist. LEXIS 23073, at *31 (S.D. Ohio March 24, 2008).

[46]      *See Amchem*, 521 U.S. at 623.

and damage also disappear because the settlement's objective criteria provide for an objective compensation scheme."[47]

At root, Rule 23(b)(3)'s predominance requirement "is meant to help courts identify cases in which aggregate treatment would be efficient."[48] A settlement class under Rule 23(b)(3) is "appropriate whenever the actual interests of the parties can be served best by settling their differences in a single action"; "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."[49]

Here, it is most efficient to resolve the claims of the settlement class through a class settlement.  Each settlement class member purchased eyeglasses from Visionworks through a BOGO promotion, and each member's claim is fundamentally about that promotion and how often it was offered.  In other words, "the common issues that preexisted the proposed settlement -- involving a common [purchase], defendant, and course of conduct -- when considered in light of the proposed settlement, predominate over any individual issues between class members."[50]

### G.    Class Litigation Is Superior to Individual Adjudications For Present Purposes

To determine whether a class action is a superior vehicle for adjudicating common issues, the district court should consider: (**1**) the interest of members of the class in individually controlling the prosecution of separate actions; (**2**) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (**3**) the desirability of

---

[47]     *Id.* at 620; *In re Inter-Op*, 204 F.R.D. at 347.

[48]     2 William B. Rubenstein, *Newberg on Class Actions* § 4:49 (5th ed. 2013).

[49]     *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

[50]     *In re Inter-Op*, 204 F.R.D. at 347.

concentrating the litigation of the claims in a single forum; and (**4**) any likely difficulties in managing the case as a class action.[51]  "In the settlement context, however, the latter consideration is not relevant."[52]

Here, a class action is superior to other available methods of adjudication for precisely these reasons. Because Visionworks allegedly engaged in exactly the same conduct with respect to every member of the proposed settlement class, and this is a proposed settlement class aimed at settling the claims of the proposed settlement class, a class action is by far a superior method of adjudicating this dispute.   Individual class members have little incentive to control the prosecution of separate individual actions because the time and expense associated with such litigation would easily exceed the potential individual recovery, especially when compared with the relief available under the proposed settlement presently before the Court (but those who wish to do so would be able to opt out of the proposed settlement class).

Consequently, the proposed settlement class satisfies Rule 23(b)(3).  And because it satisfies Rule 23(a) as well, the proposed Settlement Classes should be certified for settlement purposes only.

## V.    THE NOTICE, NOTICE PLAN, APPOINTMENT OF THE CLAIMS ADMINISTRATOR & ARGUMENTS IN SUPPORT THEREOF

### A.    Form of Notice

The proposed Notices "inform the class members of the nature of the pending action[s], the general terms of the settlement, that complete and detailed information is available ... that any class member may appear and be heard at the hearing," and "class members' right to exclude themselves and the results of failure to do so."[53]  Indeed, the Notices advise class members of

---

[51]    Fed. R. Civ. P. 23(b)(3).

[52]    *In re Inter-Op*, 204 F.R.D. at 347 (citing *Amchem*, 521 U.S. at 620).

[53]    *See Gooch v. Life Investors Ins. Co. of American,* 672 F.3d 402, 423 (6th Cir. 2012).

their rights to object, opt-out, or to participate in the settlement by filing a claim form, and the Notice provides deadlines and instructions for each option.  Therefore, the Notices are proper.

The Notices will be sent in the best form practicable: a double-sided postcard with a tear-off claims form, which will be sent by regular mail, postage prepaid, to the addresses for each class member maintained by Visionworks in its electronic customer databases.[54]  If an address change notification is received, a second postcard will be sent.[55]  The Parties have also agreed to the establishment of a website containing information about the Settlement, which will include the Notice, the Preliminary Approval Order and other relevant orders from the Court, and contact information for Plaintiff's counsel and the Claims Administrator.[56]

### B.    Timing of Notice and Claims Period

Within 7 days after the entry of a Preliminary Approval Order, Visionworks will provide the Claims Administrator with the class list.[57]  Within 30 days after the entry of a Preliminary Approval Order, the Claims Administrator will mail the Notices.[58]  Class members will have 90 days from the mailing of the Notices to submit Claim Forms.[59]  Upon completion of the verification process, production of lists of Claims, Opt-Outs, and the filing of any timely Objections, the Parties will request the Court schedule a Final Approval Hearing.

This timeline affords class members ample opportunity to submit claims, to opt-out, or to lodge objections.[60]

---

[54]    *See* Settlement Agreement (Ex. 1) at §§ 4.1.1, 4.2.2.

[55]    *Id.* at § 4.2.2.

[56]    *Id.* at § 4.2.3.

[57]    *Id.* at § 4.1.1.

[58]    *Id.* at § 4.2.2.

[59]    *Id.* at § 5.1.

[60]    *Cf. In re Whirpool,* 2016 U.S. Dist. LEXIS 174542 at *22 (N.D. Ohio May 11, 2016) (90-day period sufficient even though direct mail notice to many class members would not be possible).

### C.    The Claims Administrator

After the solicitation of various bids, the Parties agreed on the selection of KCC, LLC, a national settlement administration firm, to serve as the Settlement Claims Administrator.[61]  KCC is a well-established, competent, and respected firm in the industry and should therefore be appointed as the Claims Administrator for notice and claims administration related to this settlement, as set forth in the Notice Plan (Section IV of the Settlement Agreement).

## VI.    CONCLUSION

Therefore, the Court should (**1**) grant preliminary approval of the Proposed Settlement; (**2**) conditionally certify the proposed Settlement Classes for settlement purposes only; (**3**) appoint the named Plaintiffs as Class Representatives of the respective Settlement Classes; (**4**) appoint Plaintiffs' counsel as Settlement Class Counsel; (**5**) approve the form of Notice and Notice Plan negotiated by the Parties; (**6**) appoint KCC, LLC, as the Claims Administrator and direct the company to disseminate notice and process claims as set forth in the Parties' Settlement Agreement; and (**7**) direct the Parties to submit a Joint Status Report at the close of the Claims Period and to request the scheduling of a Final Approval of Hearing in such report.

Respectfully submitted,

s/ *Drew Legando*

Drew Legando (0084209)
Jack Landskroner (0059227)
Tom Merriman (0040906)
Edward S. Jerse (0013155)
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@lgmlegal.com
   jack@lgmlegal.com
   tom@lgmlegal.com
   ed.jerse@lgmlegal.com

---

[61]    *See* Settlement Agreement (Ex.1) at § 3.3.

17

Mark Schlachet (0009881)
3515 Severn Road
Cleveland, Ohio 44118
T. (216) 225-7559
F. (216) 514-6406
E. markschlachet@me.com

Douglas M. Werman
Marueen Salas
WERMAN SALAS P.C.
77 W. Washington Street, Suite 1402
Chicago, Illinois 60602
T. (312) 419-1008
F. (312) 419-1025
E. dwerman@flsalaw.com
    msalas@flsalaw.com

*Counsel for Plaintiffs*

## PROOF OF SERVICE

A copy of this document was served by the Court's ECF System on counsel of record on

January 9, 2017, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Signed by,

s/ *Drew Legando*
_____
Drew Legando (0084209)

18